```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

    SMITH                                     CIVIL ACTION

    VERSUS                                    NO: 13-6323

    UNION CARBIDE CORP., ET AL.               SECTION: "J" (5)
```

### ORDER AND REASONS

Before the Court is Plaintiff Miriam P. Smith's **Motion to Remand (Rec. Doc. 8)**, Defendants Dow Chemical Co., Ethyl Corp., and Union Carbide Corp. (collectively, "Removal Defendants")'s opposition (Rec. Doc. 17), and Plaintiff's reply (Rec. Doc. 22). Plaintiff's motion, which was filed on November 8, 2013, is before the Court on an expedited basis, on the briefs. Having considered the motions and memoranda of counsel, the record, and the applicable law, the Court finds that Plaintiff's motion should be **DENIED** for the reasons set forth more fully below.

### FACTS AND PROCEDURAL HISTORY

This matter arises out of a state law tort suit wherein Walter Hanson Smith, Jr. ("Mr. Smith") alleged that he developed mesothelioma as a result of his exposure to asbestos in varying

locations across the Gulf Coast, including a few job sites in Louisiana. Mr. Smith filed suit in Civil District Court for the Parish of Orleans on November 2, 2012. Shortly after the suit commenced, Mr. Smith passed away and his wife, Miriam P. Smith ("Mrs. Smith"), was substituted as Plaintiff. Mr. and Mrs. Smith were both citizens of Alabama at the time of the filing of this suit, and Mrs. Smith remains an Alabama citizen.

Four of the original defendants in this matter were Louisiana citizens: Taylor-Seidenbach, Inc. ("Taylor"), Eagle, Inc. ("Eagle"), McCarty Corp. ("McCarty"), and Maryland Casualty Insurance Company ("Maryland"). Eagle and McCarty settled all claims with Mrs. Smith and were dismissed from this case on October 22, 2013. Maryland was dismissed from the suit on October 25, 2013 without any opposition from Mrs. Smith. Therefore, the only remaining Louisiana defendant is Taylor. The only other remaining defendants are the Removal Defendants, none of which are Louisiana or Alabama citizens.

This matter was set for trial in state court on November 4, 2013; however, Defendants moved to continue the trial on October 30, 2013.[1] On November 1, 2013 the Removal Defendants filed a Notice of Removal in this Court. (Rec. Doc. 1). Mrs. Smith filed

---

[1] Trial was reset for January 13, 2014, which is the reason for expediting this motion.

the instant Motion to Remand on November 8, 2013, and requested that the motion be expedited so that, in the event the motion was granted, the parties could keep their January 13, 2014 trial date in state court. The Court granted the motion to expedite, and the Removal Defendants filed their opposition on November 19, 2013.

## **PARTIES' ARGUMENTS**

Mrs. Smith contends that this action must be remanded because she has shown a possibility of establishing a cause of action against Taylor. Mrs. Smith relies heavily on the affidavit of Dwight Cocoron wherein Mr. Cocoron affirms that he worked in several worksites where asbestos was present and many worksites where Taylor supplied asbestos materials. Mrs. Smith then points out that Mr. Cocoron worked at many of the same sites as Mr. Smith, and for that reason, she has enough evidence to state a cause of action against Taylor. Additionally, Mrs. Smith points out that Taylor clearly contemplated that it would remain in this litigation because it recently attended and asked questions at a deposition on October 22, 2013 and filed proposed jury instructions on October 29, 2013.

Alternatively, Mrs. Smith argues that Removal Defendants waived their right to remove this action by delaying the filing of their notice of removal and by engaging in litigation for ten

days after realizing that removal was appropriate. Mrs. Smith asserts that this removal is simply a jurisdictional delay tactic.

Removal Defendants argue that, though this action was previously un-removable under 28 U.S.C. § 1441(b)(2) (the "Forum Defendant Rule"), it became removable upon the dismissal of Eagle, McCarty, and Maryland. Removal Defendants argue that Taylor should be disregarded because it is improperly joined. Removal Defendants urge the Court to "pierce the pleadings" and accept summary judgment-type evidence, arguing that if the Court does so, it will be clear that there is no reasonable possibility that Mrs. Smith will be able to recover from Taylor. Removal Defendants argue that Mrs. Smith has no evidence that Mr. Smith was exposed to Taylor's asbestos-containing products, nor can she prove that Taylor was a substantial contributing factor to Mr. Smith's mesothelioma diagnosis.

Finally, Removal Defendants argue that they did not waive their right to remove this case by failing to file a notice of removal "without delay" and by litigating this matter in state court. They argue that under 28 U.S.C. § 1446(b)(3), they had thirty days to file a notice of removal. Further, Removal Defendants assert that Plaintiff's argument that they waived removal is not recognized by the removal statute and is not

applicable in this situation.

## **LEGAL STANDARD & DISCUSSION**

### **A. Timeliness of Removal/Waiver**

Under the Forum Defendant Rule, "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C.A. § 1441 (West). Additionally, 28 U.S.C. § 1446 states that

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than one year after commencement of the action.

28 U.S.C. 1446 (West). Further, the power to remove a previously unremovable action has been curtailed by the jurisprudential "voluntary-involuntary" rule which "provides that a case that is non-removable on its initial pleadings can only become removable pursuant to a voluntary act of the plaintiff." Ratcliff v. Fibreboard Corp., 819 F. Supp. 584, 586 (W.D. Tex. 1992). A plaintiff's decision to enter into a settlement is considered voluntary, therefore the voluntary-involuntary rule does not bar removal. Id. at 587.

Even when a aefendant timely files a notice of removal, he "may nonetheless waive that right by taking substantial action in state court indicating an intent to submit the case to the jurisdiction of that court." Ortiz v. Brownsville Indep. Sch. Dist., 257 F.Supp.2d 885, 889 (S.D. Tex. 2003). "Waiver will not occur, however, unless the defendant's intent is clear and unequivocal, which generally means that the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." Id. (internal citations omitted). In situations where a previously un-removable case becomes removable, whether waiver has occurred "turns on what actions the defendant takes once the case becomes removable." Id. (previous filing of a summary judgment motion was irrelevant; court found that the filing of a motion to strike was not enough to find a waiver of the right to remove); McKnight v. Ill. Cent. R.R., 967 F.Supp. 182, 186 (E.D. La. 1997). Examples of waiver include: engaging in argument on a dispositive motion or engaging in extensive discovery and substantial motion practice, including the filing of cross claims. Brown v. Demco, Inc., 792 F.2d 478, 481 (5th Cir. June 18, 1986); Jacko v. Thorn Americas, Inc., 121 F.Supp.2d 574, 576 (E.D. Tex., Aug. 7, 2000).

Removal Defendants removed this action one day before the one year deadline set forth in 28 U.S.C. § 1446, and they filed a

notice of removal within thirty days of learning that this action was removable. Specifically, they filed their notice one week after Maryland was dismissed from this action, leaving Taylor as the only forum defendant who would prevent removal. Further, the voluntary-involuntary rule does not bar removal because Mrs. Smith voluntarily dismissed Eagle and McCarty following settlement and did not oppose the dismissal of Maryland. As such, removal is proper unless Removal Defendants waived their right to remove.

Mrs. Smith argues that Removal Defendants waived their right to a federal forum by delaying the filing of their notice of removal and engaging in a course of conduct that was inconsistent with the intent to seek federal jurisdiction. Mrs. Smith points to the facts that Removal Defendants: (1) filed motions in limine, (2) took depositions, and (3) filed a motion to continue the state court trial without referencing their jurisdictional arguments. To support her contention, Mrs. Smith relies on two cases: <u>Walker v. Am. Tel. & Tel. Co.</u>, 684 F. Supp. 475, 478 (S.D. Tex. 1988) and <u>Chicago Title & Trust Co. v. Whitney Stores, Inc.</u>, 583 F. Supp. 575, 577 (N.D. Ill. 1984).

<u>Walker</u> is distinguishable because that court held that "[w]here a nondiverse defendant is voluntarily dismissed **during trial**, the diverse defendant must give *immediate* notice of his

intent to remove." Walker, 684 F. Supp. at 478. Here, trial had not yet commenced, thus this holding is inapposite. Chicago Title is more on point. In that case, the court held that the defendant either waived its right to remove or was estopped from removing when it "sought and received a continuance without notifying [the plaintiff] and the state court that it would act to remove the case in the meantime." Chicago Title, 583 F. Supp. at 577. Chicago Title, though persuasive and clearly applicable to this set of facts, may not be relied upon because it is not in line with Fifth Circuit precedent on the same issue. In the Fifth Circuit, waiver only occurs where the removing party proceeds to adjudication on the merits, and here, Removal Defendants did not do so. Rather, they postponed adjudication on the merits so as to make time to file their notice of removal. Therefore, Removal Defendants' Notice of Removal was timely filed, and they did not waive their right to remove.

**B. Fraudulent Joinder of Taylor**

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court. Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). The test for improper joinder where there is no allegation of actual fraud is

whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant. Id. A mere theoretical possibility of recovery is not sufficient to preclude a finding of improper joinder. Id. A court should ordinarily resolve the issue by conducting a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Id.

The party seeking removal bears a heavy burden of proving improper joinder. Id. at 574. In determining the validity of an allegation of improper joinder, the district court must construe factual allegations, resolve contested factual issues, and resolve ambiguities in the controlling state law in the plaintiff's favor. Burden v. Gen. Dynamics Corp., 60 F.3d 213, 216 (5th Cir. 1995). The court may, in its discretion, pierce the pleadings and conduct a summary inquiry. Id. at 573-74. "[A]lthough the type of inquiry into the evidence is similar to the summary judgment inquiry, the district court is not to apply a summary judgment standard but rather a standard closer to the Rule 12(b)(6) standard." McKee v. Kansas City S. Ry. Co., 358 F.3d 329, 334 (5th Cir. 2004) "The district court must also take into account the 'status of discovery' and consider what opportunity the plaintiff has had to develop its claims against

the non-diverse defendant." Id.

Mrs. Smith bases her claims against Taylor on three pieces of evidence:

> 1. Dwight Cocoron's affidavit from prior, unrelated litigation wherein: (a) he attests to the fact that he worked for Taylor from 1969-1995; (b) he attests to the fact that his work included asbestos work; and (c) he lists all of the sites at which he worked as a Taylor employee from 1969 through 1995. (Mot. to Remand, Pl.'s Exh. A, Rec. Doc. 8-2)
>
> 2. Mr. Smith's employment history from 1963-1970, compiled from his co-worker, Dennis Howell's, deposition. This document shows that Mr. Smith worked with asbestos at several job sites, including at American Cyanamid and at several locations at which Cocoron worked. (Mot. to Remand, Pl.'s Exh. D, Rec. Doc. 8-5)
>
> 3. Thomas Call's corporate deposition wherein he stated, on behalf of American Cyanamid, that Taylor provided materials for American Cyanamid periodically throughout the 1950s, 60s, and 70s, but was not able to provide exact dates. (Mot. to Remand, Exh. K, Rec. Doc. 8-12).

Mrs. Smith argues that this evidence is enough to support a reasonable probability that she has a cause of action against Taylor because it proves (1) that Mr. Smith worked at American Cyanamid at some point between 1963 and 1970, a time during which Mr. Call affirms that Taylor was periodically providing supplies; and (2) that, because Cocoron and Smith worked at some of the same places, there could have been a period in 1969 during which Taylor products were present at the sites where Mr. Smith worked. Removal Defendants assert that this evidence is insufficient to move Mrs. Smith's claims out of the realm of the theoretical and

into the realm of a reasonable chance of recovery.

The evidence that Mrs. Smith puts forth shows that Mr. Smith *might* have worked at some of the same sites at the same time as Cocoron, who was working as a Taylor employee. (Exh. A, Exh D) The timing is tenuous, however, because Cocoron and Mr. Smith could only have overlapped at those sites in 1969.[2] It is further true that Mr. Smith *might* have worked at American Cyanamid while Taylor products were being used; however, this is again very tenuous because Mr. Call can only testify that Taylor intermittently supplied products to American Cyanamid over a three decade span, and Mrs. Smith only has evidence that Mr. Smith worked there for four weeks during that entire time span. (Mot. to Remand, Pl.'s Exh. D, Rec. Doc. 8-5) This type of evidence falls squarely within the holding of Thibodeaux v. Asbestos Corporation Limited, et al., 2007-0617 (La.App. 4 Cir. 2/20/08), 976 So.2d 859 (2008), in which the court affirmed the grant of defendant's summary judgment where "the best evidence that the [plaintiffs] were able to submit was a suggestion that [defendant] may have supplied products which were used at Charity Hospital at some point in time between 1959 and 1984." In light of this holding, even taking all of Mrs. Smith's facts as true

---

[2] Cocoron's affidavit swears to his work history from 1969-95, and Mr. Smith's work history is detailed from 1963-1970.

and applying all inferences in her favor, it does not appear reasonably possible that a state court would impose liability on Taylor. This finding, combined with the facts that the parties are at the final stages of discovery and that Mrs. Smith has taken little action with regard to Taylor throughout the course of litigation,[3] persuades the Court that remand is inappropriate.

Accordingly,

Plaintiff's **Motion to Remand (Rec. Doc. 8)** is **DENIED**.

New Orleans, Louisiana, this 3rd day of December, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE

---

[3] Removal Defendants claim that Mrs. Smith did not propound any discovery on Taylor and did not designate any witnesses to testify against or exhibits related to Taylor despite the fact that the parties are "trial ready."