```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


SMITH ET AL.                              CIVIL ACTION

VERSUS                                    NO: 13-6323

UNION CARBIDE                             SECTION: "J" (5)
CORPORATION ET AL.
```

**ORDER & REASONS**

Before the Court is a *Motion in Limine* **(Rec. Doc. 63)** filed by Plaintiff Miriam P. Smith, Defendant Union Carbide Corporation (Union Carbide)'s opposition thereto (Rec. Doc. 82), and Plaintiff's reply. (Rec. Doc. 106) Having considered the parties' submissions, the record, and the applicable law, the Court finds, for the reasons expressed below, that the motion should be **DENIED**.

**FACTS AND PROCEDURAL BACKGROUND**

This matter arises from the death of Plaintiff's husband, Walter Hansen Smith, Jr., as a result of mesothelioma.[1] Defendants Union Carbide, Ethyl Corporation, and Dow Chemical Company are property owners on whose premises Mr. Smith worked as a pipe insulator. As a union member, Mr. Smith worked at many different premises for brief periods of time. Relevant here, Mr. Smith worked at Union Carbide's facility for a one to two week period

---

[1] For a detailed presentation of the facts and procedural history in this case, see the Court's orders dated December 3, 2013, (Rec. Doc. 24) and October 1, 2014. (Rec. Doc. 109)

sometime between 1965 and 1970. To prevail against Union Carbide, Plaintiff must prove that Mr. Smith's exposure to asbestos while working at Union Carbide's premises was a substantial factor in causing his injury. Consequently, Defendant Union Carbide retained Certified Industrial Hygienist William Dyson, Ph.D., to conduct a dose reconstruction assessment of Mr. Smith's lifetime asbestos exposure. Dr. Dyson would testify to "his professional opinion as to the estimated level of asbestos exposure Mr. Smith allegedly sustained as a result of his time working at the Union Carbide Taft facility." (Rec. Doc. 82, p. 2)

Plaintiff filed the instant *Motion in Limine to Preclude Defendant's Expert Witness William Dyson* **(Rec. Doc. 63)** on August 25, 2014. Plaintiff seeks to have the Court preclude William Dyson from testifying or, alternatively, to preclude him from testifying as to any specific asbestos exposure level with regard to Mr. Smith. Id. at 19. Defendant Union Carbide opposed the motion on September 16, 2014. (Rec. Doc. 82) Plaintiff replied on September 30, 2014. (Rec. Doc. 106)

## LEGAL STANDARD

Federal Rule of Evidence 702 provides that a witness who is qualified as an expert may testify if: (1) the expert's "specialized knowledge will help the trier of fact

2

to understand the evidence or to determine a fact in issue"; (2) the expert's testimony "is based on sufficient facts or data"; (3) the expert's testimony "is the product of reliable principles and methods"; and (4) the principles and methods employed by the expert have been reliably applied to the facts of the case. FED. R. EVID. 702. The United States Supreme Court's decision in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), provides the analytical framework for determining whether expert testimony is admissible under Rule 702. Both scientific and nonscientific expert testimony are subject to the Daubert framework, which requires trial courts to make a preliminary assessment of "whether the expert testimony is both reliable and relevant." Burleson v. Tex. Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). When expert testimony is challenged under Daubert, the party offering the expert's testimony bears the burden of proving its reliability and relevance by a preponderance of the evidence. Moore v. Ashland Chem. Co., Inc., 151 F.3d 269, 276 (5th Cir. 1998).

The reliability of expert testimony "is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid." Knight v. Kirby

3

Inland Marine Inc., 482 F.3d 347, 352 (5th Cir. 2007). A number of nonexclusive factors may be relevant to the reliability analysis, including: (1) whether the technique at issue has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. Burleson, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every Daubert factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." Guy v. Crown Equip. Corp., 394 F.3d 320, 325 (5th Cir. 2004); see also Runnels v. Tex. Children's Hosp. Select Plan, 167 F. App'x. 377, 381 (5th Cir. 2006) ("A trial judge has considerable leeway in determining how to test an expert's reliability.") (internal citations and quotations omitted).

 With respect to the relevancy prong, the proposed expert testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." Bocanegra v. Vicmar Servs., Inc., 320 F.3d 581,

4

584 (5th Cir. 2003). Ultimately, the Court should not allow its "gatekeeper" role to supersede the traditional adversary system, or the jury's place within that system. Scordill v. Louisville Ladder Group, L.L.C., No. 02-2565, 2003 WL 22427981, at *3 (E.D. La. Oct. 24, 2003). As the court in Daubert noted, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596. As a general rule, questions relating to the basis and sources of an expert's opinion rather than its admissibility should be left for the jury's consideration. United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., Miss., 80 F.3d 1074, 1077 (5th Cir. 1996) (citing Viterbo v. Dow Chem. Co., 826 F.2d 420, 422 (5th Cir. 1987)).

### PARTIES' ARGUMENTS AND DISCUSSION

Plaintiff seeks to exclude Dr. Dyson's expert testimony on the grounds that it does not meet the criteria for expert testimony as set forth in Federal Rules of Evidence 702 and 703; Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); and State v. Foret, 628 So. 2d 1116 (La. 1993). Plaintiff begins by suggesting that Dr. Dyson is a hired gun who makes his

5

living by serving as an expert witness for defendants in asbestos litigation. (Rec. Doc. 63-1, pp. 2-7) Plaintiff then describes how little information Dr. Dyson required to reach his opinion that Mr. Smith's work at Union Carbide contributed only a de minimis increase in his risk of developing mesothelioma. Id. at 7-10. Next, Plaintiff argues that Dr. Dyson's testimony fails to satisfy any of the four criteria set forth in Daubert. Id. at 10-16. Plaintiffs emphasize that Dr. Dyson's methods are not science and constitute "guesses" or "ESP." (Rec. Docs. 63-1, 106) Finally, Plaintiff reviews opinions of courts that have excluded dose reconstruction testimony such as Dr. Dyson's. (Rec. Doc. 63-1, pp. 16-19)

Union Carbide counter argues that Dr. Dyson's testimony is both relevant and reliable and, therefore, should be admitted. (Rec. Doc. 82) Dr. Dyson reviewed deposition testimony regarding Mr. Smith's exposure at Union Carbide's facility and conducted site visits at a number of the facilities where Mr. Smith worked, including the Union Carbide facility. Id. at 6. Dr. Dyson then applied dose reconstruction methodology to reach the conclusion that the one to two weeks Mr. Smith worked at Union Carbide's facility "presented only a *de minimis* contribution to the risk of developing mesothelioma." Id.

6

at 7. This dose reconstruction assessment methodology has been featured in peer-reviewed articles and is accepted and employed by federal agencies. Id. at 8-19. Union Carbide generally argues that it should not be precluded from employing dose reconstruction assessments merely because the underlying data was not taken from the actual sites of the alleged exposure; if such data were available, Union Carbide would employ it. Id. at 20-25. Plaintiff should not be permitted to use her own lack of evidence as a weapon to prevent Union Carbide from presenting evidence of Mr. Smith's lifetime exposure to asbestos. Id.

Plaintiff generally challenges the reliability of Dr. Dyson's testimony. After reviewing Union Carbide's opposition, the Court nevertheless believes dose reconstruction assessment methodologies to be sufficiently established and accepted to withstand the Daubert analysis. The Court understands Plaintiff's concerns regarding the use of the methodology here to reconstruct a particular person's dose rather than to examine a population's dose response more generally. However, the Court finds that Plaintiff adequately may address such concerns through thorough cross examination. Because the Court further concludes that Dr. Dyson's testimony is relevant, the Court will not preclude Dr. Dyson from testifying.

7

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's *Motion in Limine* **(Rec. Doc. 63)** is **DENIED**.

New Orleans, Louisiana this 11th day of February, 2015.

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE